```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                 FORT MYERS DIVISION
```

CHRISTOPHER DANIEL WARD,
JR.,

     Petitioner,

v.                              Case No: 2:21-cv-287-JES-NPM

SECRETARY, DOC,

     Respondent.

## OPINION AND ORDER

Before the Court is Christopher Daniel Ward, Jr.'s Amended Petition Under 28 U.S.C. § 2256 for Writ of Habeas Corpus by a Person is State Custody (Doc. #9).

### I. Background

On July 11, 2017, Cameron Williams arranged to sell a pound of marijuana to a person on Snap Chat called "Beans Thug." Williams' friend Jonathan Delices drove Williams to Chipotle to make the sale. Beans Thug, whose real name is Jeffrey Simmons, arrived with three other men—two entered Chipotle and the other stayed in the car. Williams and Simmons did not agree on the details of the transaction, no drugs or money exchanged hands, and the men returned to their respective cars and drove away. Simmons followed Delices' car and pulled in front of him to cut him off. Simmons' three passengers—each with a gun—got out and fired into

Delices' car, killing him. Williams got away unharmed. The shooting was recorded by a nearby home surveillance camera.

In August 2017, the State of Florida charged Ward with Delices' murder. (Doc. #12-2 at 8). Attorney Steven Smith represented Ward. The State moved to consolidate the cases against Ward and Dejerion Stewart for trial because the facts, witnesses, and victim were the same for both defendants. (Id. at 12). The trial court granted the motion over Ward's objection. (Id. at 20).

Ward and Stewart were tried together, and a jury found them both guilty of second-degree murder. (Id. at 1059). The trial court denied Ward's motion for a new trial and sentenced him to life imprisonment. (Id. at 1069, 1078). The Second District Court of Appeal of Florida (2nd DCA) affirmed Ward's conviction without a written opinion. (Id. at 1195). Ward's federal habeas petition incorporates his direct appeal brief without any new or additional argument.

## II. Applicable Habeas Law

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

>      Court of the United States; or
>      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

### III. Analysis

Ward argues the state courts erred by denying his requests for acquittal and a new trial. Ward's first ground includes five sub-grounds, three of which are repeated as Grounds 2-4. The Court will skip the duplicative parts of Ground 1.

#### a. Ground 1a: The evidence was insufficient to support a guilty verdict

Ward first argues the trial court violated the Due Process Clause by denying his motion for acquittal because the state did not present sufficient evidence to prove his guilt beyond a reasonable doubt. At trial and on appeal, Ward argued the State failed to prove that he was one of the shooters. Ward does not challenge the sufficiency of any other aspect of the State's case.

The Fourteenth Amendment's Due Process Clause "protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute

the crime with which he is charged." Jackson v. Virginia, 443 U.S. 307, 315 (1979). A federal habeas court does not ask "whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. at 319 (quotation marks and citation omitted). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quotation marks and citation omitted).

A rational jury could find that Ward was one of the shooters based on the evidence presented at trial. Jeffrey Simmons testified as follows: Simmons had known Ward for about a year in July 2017, and Ward and Simmons' sister had a child together. On July 9 or 10, Ward, Simmons, Stewart, and Rodney Ivery decided to buy some marijuana. Ward used Simmons' Snap Chat account to arrange the sale, and he supplied the money. Ward, Stewart, and Ivery accompanied Simmons to the buy the marijuana and were angry the sale did not happen. They instructed Simmons to follow Delices and cut him off. When Simmons pulled his car in front of Delices's car, Ward, Stewart, and Ivery got out and shot "quite a few" rounds into Delices' car. (Doc. #12-2 at 621-44).

Simmons further testified that Ward and Stewart met with him in the days after the shooting to "check in" and make sure he was not talking about it. Ward told Simmons to replace his tires and

remove any emblems from the car.  Police pulled Simmons over about a week later.  Simmons admitted that he initially lied to the police before telling them about the shooting.  During the police interview, Simmons identified photographs of Ward, Stewart, and Ivery.  (Id. at 650-58).  He also identified the three men in court, (Id. at 621-22), and on the video of the shooting (Id. at 667-68).

Based on Simmons' testimony, a rational trier of fact could determine that Ward was one of the men who shot up Delices' car.  Although it is framed as a due-process argument, the essence of this ground is an attack on Simmons' credibility.  And federal habeas courts must "defer to the jury's judgment as to the weight and credibility of the evidence." Conklin v. Schofield, 366 F.3d 1191, 1200 (11th Cir. 2004).  The evidence presented at Ward's trial was sufficient to support a conviction under the Due Process Clause.

### b. Ground 1b: The trial court should not have consolidated Ward's case with his co-defendant

Ward next claims the trial court violated his due-process rights by consolidating his and Stewart's cases for trial over his objection.  Ward argued on direct appeal that DNA evidence and mobile phone location data placing Stewart at the shooting improperly bolstered the case against Ward.  (Doc. #9-1 at 48-49).

The Constitution does not guarantee a criminal defendant the right to an individual trial, rather than a consolidated one. "Joint proceedings are not only permissible but are often preferable when the joined defendants' criminal conduct arises out of a single chain of events." Kansas v. Carr, 136 S. Ct. 633, 645 (2016). A defendant seeking a severance "must carry the heavy burden of demonstrating the lack of a fair trial due to actual, compelling prejudice." Puiatti v. McNeil, 626 F.3d 1283, 1309 (11th Cir. 2010) (citation omitted).

The trial court did not violate Ward's due-process rights by consolidating Ward's trial with Stewart's. Introduction of the DNA and cell phone location evidence did not unduly prejudice Ward. In fact, in response to Ward's objection, the prosecution stated it would offer the evidence against Ward in an individual trial. But even assuming Ward could have excluded the DNA and cell phone evidence from an individual trial, the joint trial did not violate his due-process rights. "[A] court's cautionary instructions ordinarily will mitigate the potential 'spillover effect' of evidence of a co-defendant's guilt." United States v. Kennard, 472 F.3d 851, 859 (11th Cir. 2006). The court in Ward's trial instructed the jury as follows:

> The defendants have been tried together, however you must consider each defendant and the evidence applicable to him separately. You may find one or both guilty or not guilty. However, your verdict as to one defendant must not affect your verdict as to the other.

(Doc. #12-2 at 1016). There is no indication the jury could not follow this instruction. The Court will not grant habeas relief based on speculation. See Kennard, 472 F.3d at 859.

Ground 1 is denied.

### c. Ground 2: The prosecutor made inappropriate comments during closing arguments

Ward claims prosecutor Anthony Kunasek violated due process during the rebuttal portion of the State's closing argument by mocking the defense theory, making statements not supported by the evidence, and shifting the burden of proof. Defense counsel—mostly Stewart's attorney, Jay Brizel—objected at trial. Ward appealed the trial court's rulings on the objections.

When a federal habeas court reviews the propriety of a prosecutor's closing remarks, the standard "is the narrow one of due process, and not the broad exercise of supervisory power." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). A petitioner must do more than show a prosecutor's statements "were undesirable or even universally condemned." Id. "The relevant questions is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id.

On direct appeal, Ward pointed to this portion of the State's rebuttal as improper mockery of an argument made by Stewart's attorney:

>   Mr. Brizel brings up extended magazine, extended magazine. There was no extended magazine, why is Mr. Kunasek asking questions? Because on the video of the shooting scene you could see Mr. Stewart going like this, and what do you see extended from the hand? The extended magazine. You can see it on the video, I'm not making it up. And that corroborates what Mr. Simmons said, because Mr. Simmons said Dejerion Stewart had the firearm with the extended magazine. So the video corroborates or is consistent with Jeffrey Simmons. We're not asking you to assume anything.
>
>   The defense makes -- both defense attorneys want to obviously wave State's Exhibit 6a around, this was the misidentification this was supposed to be Mr. Ward and he picked out number 6 and Mr. Brizel has an issue with that because it's in the number 6 position. Who introduced this?

(Doc. #12-2 at 990-91). At this point, Brizel objected to the prosecutor's "mocking tone." (Id. at 991). The trial court found the statements to be proper rebuttal but told Brizel, "if he goes over the line, you bring it to my attention." (Id.) Neither defense attorney made any subsequent objections for mockery.

Ward's argument on this point is facially insufficient. At no point did he argue that Kunasek's statements made the trial fundamentally unfair. His attorney did not even object at trial—probably because Kunasek was responding to Stewart's attorney, not Ward's. The trial judge was in a better position than this Court to evaluate the tone of Kunasek's remarks, and Ward offers no reason why this Court should reject the trial court's judgment. And while the trial court overruled Brizel's objection, the judge left the door open for future objections based on Kunasek's tone.

None came.  The 2nd DCA's rejection this argument on direct appeal was reasonable.

Brizel next objected to this statement about the cell phone location evidence for including facts not in evidence: "Because now the phone records shows that Dejerion Stewart's phone at least was pinging at that Market Street address, the one that's in his hand."  (Id. at 995).  For context, part of Stewart's defense theory was that he had misplaced his phone, and someone else had possession of it during the shooting.  In response to Brizel's objection, the trial court gave a curative instruction:

> This is closing argument.  What the lawyers say is not evidence, but what they say is intended to aide you in understanding the case.  You rely on your memory and your collective memories as to what the evidence is.

(Id.)

Kunasek's statement was not directed at Ward's defense, and his attorney did not object.  What is more, the court gave a curative instruction, and there is no indication the jury failed to follow it.  This part of Ward's claim is frivolous.

In his next objection, Brizel argued the following statement shifted the burden of proof by suggesting the defendants had to prove something: "So Mr. Simmons' brother, Jacquel Ward, I think is who they're suggesting is the real murderer is forced doubt, because there's no evidence to support that."  (Id. at 996).

Smith joined in the objection. (Id. at 996-97). But the trial court overruled it. (Id. at 997).

"While the prosecution may not make comments that shift the burden of proof to defendant or comment on a defendant's failure to testify ... the prosecutor may comment on the 'lack of evidence' supporting a defense theory of the case." United States v. Signore, 780 F. App'x 685, 697-98 (11th Cir. 2019) (quoting United States v. Bernal-Benitez, 594 F.3d 1303 (11th Cir. 2010)). Kunasek's comment fell squarely on the permissible side of that line. The defendants attempted to blame the murder on someone else, and Kunasek was free to point out the lack of evidence supporting that theory. The state court reasonably rejected this argument.

Finally, both defense attorneys objected to the accuracy of this description of the video recording of the shooting:

> And when you were watching the shooting video, if you happened to notice, or if you happened to be looking, you could tell that there are two people, the two defendants, have moved their shirts up over their heads, they're shirtless.

(Id. at 998). The court overruled the objection. The trial court was better positioned than this Court to determine whether this comment misrepresented the video. What is more, Ward has not shown any conceivable prejudice. The jury was free to watch the video while deliberating, and it did. Thus, the jurors could judge the accuracy of Kunasek's statement for themselves.

- 10 -

The State's rebuttal argument did not render Ward's trial fundamentally unfair, so it did not violate his right to due process. Ground 2 is denied.

### d. Ground 3: The guilty verdict is contrary to the law

Ward argues the verdict is unlawful because the trial court applied the wrong standard to his motion for a new trial. This is a state-law issue, and Ward only cited state law to support his argument. This ground thus cannot be the basis for federal habeas relief. See Wilson, supra; see also Estelle v. McCuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (internal quotation marks and citation omitted)). Ground 3 is denied.

### e. Ground 4: The trial court allowed the state to present prejudicial photo to the jury

Finally, Ward argues the trial court violated his right to due process by allowing the State to introduce improper identification evidence. While Williams was on the witness stand, the prosecutor showed him a picture of Ward and Stewart in front of a police car and asked if they were the same individuals Williams saw in Chipotle. Williams answered, "Yes." (Doc. #12-2 at 353). Smith objected because Williams had not previously identified Ward (Williams picked a different person in a photo lineup), and because the presence of the police car in the photo was prejudicial. The trial court overruled the objection and

admitted the photo as State's Exhibit 84. (Id. at 354). On appeal, Ward argued the photo was prejudicial and Williams' identification testimony was suggestive.

"[F]ederal courts will not generally review state trial courts' evidentiary determinations." Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1295 (11th Cir. 2014). "Habeas relief is warranted only when the error 'so infused the trial with unfairness as to deny due process of law.'" Id. (quoting Lisenba v. California, 314 U.S. 219, 228 (1941)). "To render a state-court proceeding fundamentally unfair, the excluded evidence must be material in the sense of a crucial, critical, highly significant factor." Id. (internal quotation marks and citation omitted).

Admission of the photo did not render the trial fundamentally unfair. Ward apparently had a recognizable hair style at the time of the shooting, but he cut his hair before trial. So a photograph of Ward with his old hair style was relevant identification evidence. Williams' testimony that he recognized the men in the photo from Chipotle likewise did not render the trial fundamentally unfair. Williams had previously testified that he had an opportunity to observe the men in Chipotle—they had a brief confrontation in the parking lot—and described their appearance. The state court could reasonably find that Williams' testimony was reliable enough to present to the jury. See Manson v. Brathwaite, 432 U.S. 98, 114 (1977) ("reliability is the linchpin in

determining the admissibility of identification testimony"). Williams' failure to identify Ward in a photo lineup went to his credibility, and Ward was able to use that failure in cross-examination.

Ward also fails to show prejudice. This was not the only evidence identifying Ward as one of the shooters. Simmons—who had known Ward for about a year—testified at length about Ward's participation in the shooting and the aborted drug deal that led to it. The State also presented a video of the shooting. Even without the photo and Williams' testimony about it, the State presented ample evidence that Ward was one of the shooters. Ground 4 is denied.

### IV. Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement

to proceed further," <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (citations omitted).  Ward has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is hereby

**ORDERED**:

Christopher Daniel Ward, Jr.'s Amended Petition Under 28 U.S.C. § 2256 for Writ of Habeas Corpus by a Person is State Custody (Doc. #9) is **DENIED**.  The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE and ORDERED** at Fort Myers, Florida, this ___18th___ day of October 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1

Copies:
All parties